UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      |
JENNIFER D. BROWN,                    |
an individual,                        |          Civil Action No.
                          Plaintiff,  |
                                      |
v.                                    |
                                      |
TOO FACED COSMETICS, INC.,            |
a California corporation,             |
                          Defendant.  |
_____ |

## COMPLAINT

1.      This case arises from defendant Too Faced Cosmetics, Inc.'s

knowing, willful, and ongoing infringement of Jennifer Brown's "Mood

Swings" registered trademark. Too Faced has used – and continues to use – its

deep pockets and industry-insider status to swamp the market, overwhelm Ms.

Brown's efforts, and yank the Mood Swings mark away from Ms. Brown – the

mark's creator, registrant, and rightful owner.

2.      Ms. Brown is a Boston resident, a registered, board-certified art

therapist, and a small business owner. She began using the "Mood Swings"

trademark commercially in 2000 on her entire line of aromatherapy-inspired

personal care products. She registered the mark in 2005. She has used it

continuously ever since.

3.     During her decade using the mark, Ms. Brown invested thousands of dollars and many hundreds of hours of her time to establish and promote the Mood Swings brand. She developed a strong product line and substantial goodwill in the mark.

4.     Not just that: after a decade of careful preparation and promotion during which she sold Mood Swings products to customers across the country at fairs, through the mail, at tourist beaches, and by positive word of mouth, she has laid the groundwork for the next phase of her business. This decade of work is now under threat by Defendant Too Faced Cosmetics, Inc.

5.     Defendant Too Faced Cosmetics is a large beauty products corporation based in Orange County, California. In 2007, Too Faced attempted to register "Mood Swing" as a trademark for a line of lip glosses.

6.     The U.S. Patent and Trademark Office rejected Too Faced's attempt, finding that "Mood Swing" – Too Faced's unregistered junior mark – was confusingly similar to "Mood Swings" – Ms. Brown's registered senior mark. The USPTO, in a final decision, found that "confusion as to source is likely in this case," and "to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer," it refused to allow Too

Faced to register its trademark. Defying the USPTO's decision, *Too Faced continued to use the infringing mark.*

7.      For three years, Too Faced has infringed Ms. Brown's Mood Swings trademark on a massive scale. It found great success by illegally using Ms. Brown's trademark.

8.      From the very start – certainly no later than November 2007, when the USPTO informed Too Faced that its mark was confusingly similar to Ms. Brown's mark – Too Faced knew that its mark infringed Ms. Brown's registered senior mark. Yet Too Faced did not contact Ms. Brown (who at the time lived less than an hour's drive from Too Faced's headquarters) to seek a license to use the mark. Too Faced did not write to Ms. Brown to discuss its liability for the massive infringement it was committing. Too Faced did not even telephone Ms. Brown to find out whether she was still using the mark (which she was). Too Faced did *absolutely nothing* to try to resolve the matter legally and peacefully.

9.      Instead, Too Faced attacked. It aggressively petitioned the Trademark Trial and Appeals Board to *cancel* Ms. Brown's Mood Swings trademark. Too Faced argued that Ms. Brown had abandoned the mark. The *only* basis for its claim was that Ms. Brown had previously dissolved the

limited liability company through which she had sold her products for a short time.

10.     Ms. Brown is opposing the ongoing petition. Promptly after learning of the cancellation proceeding, she informed Too Faced that she had not abandoned the trademark. She notified Too Faced that she planned to continue to use the trademark, and that Too Faced was violating her trademark rights by continuing to sell their Mood Swing-branded lip glosses. She notified Too Faced that she intended to pursue legal action against Too Faced to remedy its violation, which she now does.

11.     By the best evidence available, it is apparent that Too Faced has done extremely well for itself by using Ms. Brown's Mood Swings mark to sell its own personal care products. Just a few months ago, in the midst of the cancellation dispute, Too Faced intensified its infringing conduct. It started marketing and selling three *new* varieties of Mood Swing-branded lip gloss.

12.     Too Faced, the classic corporate bully, is intent on swiping Ms. Brown's intellectual property through marketing might and sharp tactics. Too Faced co-opted Ms. Brown's trademark and severely damaged Ms. Brown chance to succeed with her Mood Swings business. Ms. Brown will not let Too Faced take that which is rightfully hers. Ms. Brown brings this case to

recover the profits that Too Faced made by using and brazenly infringing her registered trademark, to be made whole for the damage that Too Faced caused her, and to salvage her Mood Swings trademark by putting a stop to Too Faced's willful and knowing infringement.

## PARTIES

13.     Plaintiff Jennifer Brown is a Massachusetts resident living at 372 Blue Ledge Drive, Boston, MA 02131.

14.     Defendant Too Faced is a cosmetics business incorporated in California with a principal place of business at 17595 Harvard Ave, Suite C-503, Irvine, CA 92614. At all relevant times, it has done and still does business in Massachusetts.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition claims). The Court also has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), because those claims are substantially related to the same acts giving rise to the federal claims.

16.    This Court has personal jurisdiction over defendant Too Faced under G.L. ch. 223A, § 3, because Too Faced has committed and continues to commit acts of trademark infringement and unfair competition while using trademarks confusingly similar to Ms. Brown's mark to conduct and solicit business by advertising, marketing, and promoting confusingly similar products in Massachusetts.

17.    This court is the correct venue under 28 U.S.C. § 1391(b)(2), because a substantial part of the infringing activity and unfair competition occurred and continues to occur in the District of Massachusetts, and under 28 U.S.C. § 1391(c), because Too Faced is a corporation subject to personal jurisdiction in the District of Massachusetts.

## FACTUAL BACKGROUND

### Ms. Brown Founds Mood Swings

18.    Jennifer Brown is a self-made woman. Born and raised in inner-city Detroit, she obtained an education and made a life for herself through the sheer persistence of her will and her work ethic.

19.    The Mood Swings story began more than a decade ago. While finishing college in San Francisco in the late 1990s, Ms. Brown began researching personal care products. She studied the ways that "essential oils"

interact and affect a person's physical and mental health. She studied methods of manufacturing, types of non-reactive containers, and personal care marketing techniques.

20.     In 2000, while obtaining her master's degree in art therapy from New York University, Ms. Brown committed herself to a goal that would remain her guiding purpose to this day. She decided that she would produce personal care products of her own design, using top-shelf organic ingredients. She would sell them as stand-alone retail products, and promote them alongside her private clinical therapy practice. She would brand the products "Mood Swings."

21.     Ms. Brown's first step was to create the Mood Swings product line. She spent months designing labels by hand and with computer design software that she taught herself to use. She continued to research aromatherapy theory; she consulted experts; she designed and printed business cards and brochures. Later, she would hire a designer to set up a website. She spent thousands of dollars of her own money (either earned through part-time work or borrowed) to buy essential oils, ingredients, bottles, jars, and other necessary accoutrements. She worked through many, many sleepless nights creating, labeling, and packaging the Mood Swings products.

## Ms. Brown Starts Selling Mood Swings In New York

## and Develops a Clientele

22.     In 2000, Ms. Brown began selling her first products. She started, as so many successful businesses do, with a shoestring budget. There was no money for a splashy advertising campaign. Her strategy was to develop a sterling reputation for high-quality products and to develop a positive word-of-mouth.

23.     Sales began slowly, but the Mood Swings products were hitting the mark. Although she was not yet profitable, the results – in sales and in feedback of return customers – showed Ms. Brown that her Mood Swings products were competitive with other established brands.

24.     In 2001 and 2002, Ms. Brown bought tables at a high-end crafts fairs in Brooklyn, including the highly popular "Nest" local crafts fair in DUMBO, and a large arts festival in Park Slope. Sales and reactions were promising.

## Ms. Brown Relocates Mood Swings to California and

## Forms JenniCrafts LLC

25.     In early 2003, Ms. Brown moved to California. She continued to market and sell Mood Swings products. In February 2004, she filed an

application with the United States Patent and Trademark Office to register her Mood Swings trademark.

26.     In April 2005, Ms. Brown purchased the domain name www.moodswingsaromatherapy.com.

27.     On June 3, 2005, Ms. Brown formed Jennicrafts LLC.

28.     On June 14, 2005, the USPTO accepted Ms. Brown's Mood Swings trademark into the trademark registry. Ms. Brown's Mood Swings trademark became U.S. Registration No. 2962378. (A true and correct copy of the registration is attached hereto as Ex. A.)

29.     From 2004 to 2009, Ms. Brown continued to sell Mood Swings from her base in California to customers in New York, Michigan, California, Connecticut, and elsewhere. She took part in more crafts fairs, sold to new and repeat customers, and filled an order from a New York-based medical device company for several hundred products to be used as promotional "give-aways" at a large industry convention.

30.     At the same time, Ms. Brown began a family, becoming the proud mother of two daughters. On top of all this, Ms. Brown was enrolled in the clinical psychology doctoral program at Pepperdine University.

## Ms. Brown Moves Mood Swings to Boston

31.    In September 2009, for family reasons, Ms. Brown moved to Boston. She continues to pursue her degree, drafting her dissertation, and working at the Center for Homicide Bereavement with the Cambridge Health Alliance and at a mental health care clinic in Springfield. And she continues to manufacture, market, and sell Mood Swings.

32.    After a decade of careful preparation and promotion during which she researched ingredients, manufactured the products, designed the packaging, distributed brochures, designed a website, and sold her products to customers across the country at fairs, over the internet, and by positive word of mouth, Ms. Brown has succeeded in developing substantial goodwill in the Mood Swings mark. Now, her doctorate nearly complete, Ms. Brown is ready to reinvigorate her Mood Swings business. She is on the cusp of fulfilling her dream: to use her Mood Swings products in a clinical practice, and to use the clinical practice to support Mood Swings product sales online and at retail outlets across the country.

**Too Faced Infringed Ms. Brown's Mood Swings Trademark**

**Knowingly and Willfully**

33.    In July 2007 – seven years after Ms. Brown began selling personal care products under the Mood Swings mark, and more than two years after the USPTO recorded Ms. Brown's Mood Swings mark on the federal register – Too Faced tried to register "Mood Swing" as its own trademark. It applied for a trademark in Class 003 – the same as Ms. Brown's Mood Swings trademark.

34.    In November 2007, the USPTO Examining Attorney refused Too Faced's application. She wrote: "Registration of the proposed mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2962378 for MOOD SWINGS" – Ms. Brown's mark. The USPTO Examining Attorney found that the marks were "nearly identical in appearance, sound, and commercial impression."

35.    "[Too Faced]'s goods are related to those recited by [Ms. Brown] because," the USPTO Examining Attorney continued, "they are both common and popular cosmetic products that are likely to travel through the same channels of trade to the same classes of purchasers.  For example, lip gloss, lip gloss palette, and lipstick are likely to be sold in the same cosmetic

and beauty care stores that also sell aromatherapy oils, lotions, bubblebaths, body scrubs, sachets and body mists." The USPTO concluded that "confusion as to source is likely in this case."

36.     It is indisputable: by November 2007, Too Faced knew about Ms. Brown's Mood Swings registered trademark, and Too Faced knew that the USPTO had found Too Faced's use of the mark to create a "likelihood of confusion" with Ms. Brown's Mood Swings trademark. *Yet Too Faced continued selling its Mood Swing lip glosses.*

37.     In May 2008, after a six month delay, Too Faced finally filed a response to the USPTO Examining Attorney's findings. Too Faced argued (among other things) on May 6, 2008, that "the goods bear minimal relation" because "[w]hile the cited marks are both classified in International Class 03, they are each used for a highly specific purpose in the personal care/cosmetics genre."

38.     On June 3, 2008, the USPTO Examining Attorney issued a final decision, writing that "[Too Faced]'s arguments have been considered and found unpersuasive." A true and correct copy of the USPTO's Final Office Action is attached hereto as Ex. B.

39.     The Examiner's Final Office Action continued: "In this case, the

following factors are the most relevant:  similarity of the marks, similarity of

the goods, and similarity of trade channels of the goods." (Ex. B at 4.)

40.    It continues: "Given that the marks are nearly identical, this makes

it even more likely that a consumer who is familiar with [Ms. Brown]'s mark

and goods who then encounters [Too Faced]'s mark and goods will be

confused about the source of the goods and the possibility that both goods are

product lines stemming from the same origin." (Ex. B at 6.)

41.    And: "Given the expansive and overlapping nature of the cosmetics

and body care products industries, many companies produce both bath

products and cosmetics, of the kind recited by the registrant and applicant. . .

. [C]ustomers are likely to believe the goods at issue come from or, are in

some way connected with, the same source." (Ex. B at 6.)

42.    The USPTO also roundly rejected Too Faced's argument that Ms.

Brown's mark was not famous enough to warrant protection: "[Too Faced]

states that the fame of a prior mark increases the likelihood of confusion and

it contends that the registered mark is not famous in any way, therefore

concluding that the registrant's lack of fame decreases the likelihood of

confusion in this case. This argument is also unavailing because the

registrant's mark is nevertheless entitled to protection against registration by a

subsequent user of the same or similar mark for the same or closely related

goods or services. As discussed above, the marks are nearly identical and the

cosmetics and body care goods are closely related. *[Too Faced] should note that*

*the overriding concern is not only to prevent buyer confusion as to the source of the*

*goods and/or services, but to protect the registrant from adverse commercial impact due*

*to use of a similar mark by a newcomer.*" (Ex. B at 6-7; emphasis supplied.)

43.     Despite the USPTO's decision, *Too Faced kept selling Mood Swing*

*products.*

44.     The decision notified Too Faced that it had six months to respond

or its application for the trademark would be considered abandoned. Too

Faced did not respond within six months. On December 30, 2008, the

USPTO declared that Too Faced abandoned its application. It has since filed

papers in an attempt to revive the application.

**Too Faced Is Unjustly Profiting From Ms. Brown's Trademark**

45.     Apparently undeterred by the USPTO's finding – and final

confirmation – that Too Faced's use of the Mood Swing mark would harm

Ms. Brown's Mood Swings mark, Too Faced proceeded to blanket the country

with a well-funded marketing campaign. Too Faced's use of Ms. Brown's

Mood Swings mark to sell confusingly-similar personal care products through

the same channels of commerce causes consumer confusion as to source, sponsorship, and affiliation.

46.    Too Faced refused Ms. Brown's request that it disclose the revenues it made from selling Mood Swing products. But all available evidence indicates that Too Faced is making tremendous profits from its infringement of Ms. Brown's trademark.

47.    For example, Too Faced regularly features its Mood Swing-labeled products on its website's "What's Hot" page. Too Faced has sold Mood Swing-labeled products on television "home shopping" networks. The Too Faced Mood Swing-labeled products are stocked on shelves at major retailers such as Sephora. For a time, Too Faced sold a Mood Swing product with a "Smurf" tie-in. In a memorable appearance on a television show starring Joan Rivers titled "How'd You Get So Rich," Mr. Blandino bragged that his company was worth over $100 million. And just this year, Too Faced introduced three *new* varieties of Mood Swing-labeled products.

48.    The damage to Ms. Brown's Mood Swings business is irreparable. It is now practically impossible for Ms. Brown to use her registered trademark to sell her Mood Swings personal care products without consumers assuming that the products are connected to Too Faced. Too Faced's aggressive

marketing campaign has virtually stripped the Mood Swings mark from Ms.

Brown. In doing so, Too Faced profited greatly – and unjustly.

## COUNT I

### *Trademark Infringement*

49.     Ms. Brown restates and incorporates by this reference the allegations

contained in paragraphs 1 through 48.

50.     Too Faced has used and continues to use the unauthorized Mood

Swing mark in Boston and nationwide in connection with the marketing,

solicitation, and adverting of its personal care products in commerce.

51.     Too Faced's unauthorized use of the Mood Swing mark was

intended to cause, has caused, is causing, and is likely to continue to cause

confusion, or to cause mistake, or to deceive as to affiliation, connection, or

association of Too Faced with Ms. Brown as to the origin of Too Faced's and

Ms. Brown's products.

52.     Too Faced's infringement of Ms. Brown's registered Mood Swings

trademark has been knowing, willful, wanton, reckless, and in total disregard

of Ms. Brown's rights.

53.     Too Faced's unauthorized use of the Mood Swings mark constitutes

trademark infringement, unfair competition, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). Too Faced's unauthorized use of the Mood Swings mark in Boston and nationwide caused and is likely to continue to cause substantial and irreparable injury to Ms. Brown, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury unless Too Faced's use of the Mood Swing mark is enjoined by this Court.

54.     By reason of the foregoing, Ms. Brown has suffered monetary damages and loss of goodwill and is entitled to injunctive relief and damages in an amount to be proved at trial. By reason of Too Faced's willful acts, Ms. Brown is entitled to a trebling of damages under 15 U.S.C. § 1117. This is an exceptional case making Ms. Brown eligible for an award of attorney fees under 15 U.S.C. § 1117.


## COUNT II

### *State Law Trademark Infringement*

55.     Ms. Brown restates and incorporates by this reference the allegations contained in paragraphs 1 through 54.

56.     Ms. Brown owns and enjoys common law rights in the Mood

Swings mark which are superior to any rights Too Faced may claim to any similar mark.

57.    As such, Ms. Brown's trademarks are entitled to protection under Mass. G.L. ch. 110H, § 13.

58.    Too Faced's unauthorized use of the Mood Swings marks was intended to cause, has caused, is causing, and is likely to continue to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Too Faced with Ms. Brown as to the origin of Too Faced's and Ms. Brown's products.

59.    Too Faced's infringement of the Mood Swings trademark has been willful, wanton, reckless, and in total disregard of Ms. Brown's rights. Too Faced's unauthorized use of the Mood Swings mark caused and is likely to continue to cause substantial and irreparable injury to Ms. Brown's business reputation, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury to Ms. Brown's business reputation unless Too Faced's use of the Mood Swing is enjoined by this Court.

60.    Ms. Brown is entitled to injunctive relief to enjoin Too Faced's further use of the Mood Swing mark under Mass. G.L. ch. 110H, § 13.

## COUNT III

### *Trademark Dilution*

61.    Ms. Brown restates and incorporates by this reference the allegations contained in paragraphs 1 through 60.

62.    Too Faced's unauthorized use of the Mood Swing mark was intended to cause, has caused, is causing, and is likely to continue to cause dilution of the distinctive quality of Ms. Brown's registered trademark in violation of Mass. G.L. ch. 110H, § 13.

63.    Such unauthorized use caused and is likely to continue to cause substantial and irreparable injury to Ms. Brown, which injury cannot be accurately computed at this time, and will continue to cause substantial and irreparable injury unless Too Faced's use of the Mood Swing mark is immediately enjoined by this Court.

64.    Too Faced's conduct as described has been knowing, willful, wanton, reckless, and in violation of Ms. Brown's rights.

65.    By reason of the foregoing, Ms. Brown has been damaged and is entitled to immediate injunctive relief.

# COUNT IV

## *Common Law Trademark Infringement*

## *and Unfair Competition*

66.     Ms. Brown restates and incorporates by this reference the allegations contained in paragraphs 1 through 65.

67.     Ms. Brown owns and enjoys common law rights in her trademark that are superior to any rights Too Faced may claim to any similar mark.

68.     Too Faced's unauthorized use of the Mood Swing mark in connection with the sale, distribution, offering for sale, marketing, or advertising of its products is, and has been, committed knowingly in order to capitalize on and misappropriate Ms. Brown's valuable goodwill in the Mood Swing trademark that it created through continuous usage of her mark over the past ten years.

69.     Too Faced's unauthorized use of the Mood Swing mark has caused, is causing, and is likely to continue to cause confusion or mistake or to deceive consumers as to the source of origin of the relevant products. Too Faced's acts and conduct as set forth herein constitute trademark infringement in violation of Massachusetts common law.

70.     Too Faced's acts and conduct as set forth herein constitute unfair competition, willful, unfair and deception acts or practices within the Commonwealth of Massachusetts and violations of Massachusetts common law.

71.     Both Too Faced and Ms. Brown are engaged in trade and commerce in the Commonwealth of Massachusetts.

72.     Too Faced's wrongful and infringing activities were intended to cause, have caused, and unless enjoined by this Court will continue to cause irreparable injury and other damage to Ms. Brown's business, reputation, and goodwill.

73.     Too Faced's conduct as described above has been willful, wanton, reckless, and in violation of Ms. Brown's rights.

74.     By reason of the foregoing, Ms. Brown is entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Brown respectfully asks the Court to enter judgment in her favor on all counts and against Too Faced Cosmetics, Inc., and to grant Ms. Brown the following relief:

1.      A permanent injunction prohibiting Defendant Too Faced and its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them from:

     a.      In any way using, displaying, advertising, copying, imitating, or infringing upon the Mood Swings trademark;

     b.      Using or displaying the Mood Swings trademarks or confusingly similar variations thereof, including without limitation "Mood Swing," in any written or oral advertisements, displays, signs, sales promotions, internet websites, or in any other public communication in connection with Defendant Too Faced's products or services;

     c.      Otherwise infringing upon Ms. Brown's trademark; and

     d.      Otherwise unfairly competing with Ms. Brown.

2.      Order Defendant Too Faced to account and pay over to Ms. Brown all gains, profits, and advantages derived from sales of products labeled with the infringing marks;

3.     Order Defendant Too Faced to pay Ms. Brown the damages which she has sustained by reason of the conduct alleged herein;

4.     Order Defendant Too Faced to pay damages totaling three times the compensatory damages for its willful and intentional misconduct as provided for in 15 U.S.C. § 1117 and other applicable law;

5.     Allow Ms. Brown permission to elect, prior to final judgment, statutory damages as its recovery rather than actual damages and profits as provided in 15 U.S.C. § 1117;

6.     Order Defendant Too Faced to pay pre-judgment interest on Ms. Brown's damages as provided in 15 U.S.C. § 1117, and other applicable law;

7.     Order Defendant Too Faced to pay the cost of this action as provided in 15 U.S.C. § 1117, and other applicable law;

8.     Order Defendant Too Faced to pay Ms. Brown's attorney fees of this action as provided in 15 U.S.C. § 1117 and other applicable law; and

9.     Grant such other and further relief as is just and proper.

## JURY DEMAND

Ms. Brown hereby demands a trial by jury on all claims so triable.


Respectfully Submitted,
Jennifer Brown, Plaintiff
By her attorneys:


___/s/Joshua Goldstein_____
Joshua Goldstein, Esq.
State Bar #644450
Law Offices of Joshua L. Goldstein, PC
6 Beacon Street, Suite 500
Boston, MA 02108
(617) 722-0005
Date: August 18, 2010